[Crim. No. 3368.    Fourth Dist., Div. Two.    Dec. 16, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. STEVEN B. PETTERSEN, Defendant and Appellant.

Alexander L. Oster for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Arthur B. Rosenfeld, Deputy Attorney General, for Plaintiff and Respondent.

FOGG, J. pro tem.*—Defendant was charged by information with a violation of Penal Code, section 4600, in count I (wilful and intentional destruction of property of California Rehabilitation Center) and in count II with a violation of Penal Code, section 404.6 (urging riot). After denial of his motion to set aside the information, defendant pleaded not guilty as to both counts. Defendant waived a jury trial, and the Superior Court of Riverside County found him guilty as to count I and dismissed count II.

The trial court denied defendant's motion for a new trial and motion in arrest of judgment. Probation was denied and the defendant sentenced to state prison for the term prescribed by law. Defendant appeals from the judgment of conviction.

Edward L. Wiggs was employed as a correctional officer at the California Rehabilitation Center (Center) at Norco, California, on January 1 and 2, 1968. His duty position on the night in question was located at the pedestrian gate leading to the women's unit.

Officer Wiggs first observed appellant at 11:15 or 11:20 p.m. on January 1, 1968, as appellant was coming around from the

*Assigned by the Chairman of the Judicial Council.

side of the landscape building located within the confines of the Center. Appellant, at that time, was about 450 feet from the officer and was using a shovel to break windows in the building. At this time Officer Wiggs also noticed that there were other inmates in the vicinity and breaking windows. Officer Wiggs had observed the above destruction through binoculars.

The entire area is well lighted with outside lights on the eaves of the building which lighted the entire area where appellant was first seen by Officer Wiggs.

Officer Wiggs next saw appellant about 10 or 15 minutes later standing about 3 feet in front of him at the gate house. Appellant had just broken a window in the gate house with the same shovel. At the time of this second incident there were approximately 12 people with appellant. Prior to this entire incident Officer Wiggs had never seen appellant.

Approximately 16 days after the above riot, Officer Wiggs was shown about a dozen photographs by his supervisor for the purpose of identifying the participants in the riot. Two or three of the pictures were of Caucasians; the remaining photographs were of Mexican-Americans and Negroes. Officer Wiggs identified appellant from a photograph as the person he had seen breaking the windows.

Officer Wiggs stated that he would have been able to identify appellant without the aid of the photograph.

Defendant makes the following contentions on appeal:

I—The trial court erred in denying his motion under Penal Code, section 995, and also his motion in arrest of judgment.

II—The trial court erred in denying defendant's motion for a new trial.

I

Section 4600 of the Penal Code provides: ''Every person who wilfully and·intentionally breaks down, pulls down, or otherwise destroys or injures any jail or prison, is punishable by fine not exceeding ten thousand dollars ($10,000), and by imprisonment in the state prison not exceeding five years, . . .''

█ Defendant contends that his motions under Penal Code, section 995, and in arrest of judgment should have been granted since the information charged him with destroying property of the Center which was a hospital and not the ''jail or prison'' mentioned in section 4600. He cites *In re De La O*, 59 Cal.2d 128 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705], as authority for his assertion that the Center at Norco is

a hospital and not a prison. However, a careful reading of this case reveals that the Supreme Court is dealing with the *type* of commitment under Penal Code, sections 6450 and 6451, providing for the confinement of narcotics addicts in the Center. This decision in no way attempts to define the Center as a "hospital"; instead it holds that a commitment under Penal Code, section 6450 and related sections, does not impose criminal penalties for an illness-narcotics addiction—and, therefore, does not constitute cruel and unusual punishment within the meaning of *Robinson* v. *California,* 370 U.S. 660 [8 L.Ed.2d 758, 82 S.Ct. 1417]. In other words, *In re De La O, supra,* holds that a narcotics commitment to the Center is civil, not penal, in nature.

Section 4600 is found in part III of the Penal Code. Section 3305 of the Welfare and Institutions Code provides as follows: "The supervision, management and control of the California Rehabilitation Center and the responsibility for the care, custody, training, discipline, employment and treatment of the persons confined therein are vested in the Director of Corrections. *The provisions of Part 3 of the Penal Code apply to said institution as a prison* under the jurisdiction of the Department of Corrections and to the persons confined therein insofar as such provisions may be applicable." (Italics added.)

We believe that the Attorney General is correct in maintaining that in dealing with this question whether Center is a hospital or prison, a distinction must be made between the status of the inmate and the physical structure itself. We must, therefore, consider the question whether Center is a prison insofar as this defendant is concerned. The plaintiff contends that a person committed under a civil commitment for hospital-type treatment may not be serving a sentence but still be confined to a prison. We believe this is an obvious conclusion to be drawn not only from the physical characteristics of the Center, but also because the legislative intent to consider the Center as a prison is clear.

In creating the Deuel Vocational Institution (formerly California Vocational Institution) in 1945 the Legislature provided in section 2041 of the Penal Code as follows: "The provisions of Part 3 of this code [fn. omitted] apply to the Deuel Vocational Institution and to the persons confined therein so far as such provisions may be applicable. . . ."

In criticizing the "ambiguous characterization" of this institution in section 2041, the appellate court in *People* v. *Romo,* 256 Cal.App.2d 589 [64 Cal.Rptr. 151], held that Penal

Code, section 4501 (assault with deadly weapon by state prison inmate) and Penal Code, section 4502 (possession of a weapon by such a person) did not apply to Youth Authority wards in Deuel. The court stated at page 592 that ''[H]aving abstained from calling the institution a prison, the Legislature adopted various special provisions characterizing it in relationship to allied statutes.'' But in the act creating the Center in 1965 we find that the Legislature added the words, ''as a prison,'' in a provision similar to Penal Code, section 2041, *supra*. (See Welf. & Inst. Code, § 3305, *supra*.) In our opinion this manifested a clear intent upon the part of the Legislature to treat Center as a prison in all situations wherein penal sanctions are imposed, such as the wilful destruction of state property, a prison, in violation of Penal Code, section 4600.

Undoubtedly the purpose of Penal Code, section 4600, is to prevent wilful destruction to state property, i.e., prisons and jails. It would follow, then, that the legislative objective of section 4600 would be furthered by a finding that Center is a prison.

## II

Defendant's contention that the trial court abused its discretion in denying defendant's motion for a new trial is without merit. He contends that correctional officer Wiggs' identification of defendant at the trial was prejudicially influenced by his identification of defendant's photograph out of court and some 16 days after the riot at Center. He cites *United States* v. *Wade*, 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California*, 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], in support of his contention that defendant's in-court identification by Wiggs was ''tainted'' by the showing of these photographs to the officer.

Of course, *Wade* and *Gilbert* dealt with unfair police line-ups and their influence on in-court identification. But both cases held that a witness could properly testify as to his observations of a suspect other than at the ''tainted'' line-up. In the recent case of *Simmons* v. *United States*, 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967], the Supreme Court considered the question whether a pretrial identification by means of photographs was in the circumstances so unnecessarily suggestive and conducive to misidentification as to deny a defendant due process of law. The court said at p. 971 [19 L.Ed.2d at p. 1253]: ''Despite the hazards of initial identification by photograph, this procedure has been used widely

and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in *Stovall* v. *Denno,* 388 U.S. 293, 301-302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967, 1972-1973], and with decisions of other courts on the question of identification by photograph.'' In the case at bench there was ample evidence of observations by Officer Wiggs at the time the offense was alleged to have occurred which left no reasonable doubt that defendant was not misidentified. Also Officer Wiggs testified on cross-examination that he would have recognized defendant in court as one of the persons involved in breaking windows without having seen the photographs some 16 days after this incident. We conclude, therefore, that the in-court identification of defendant was neither aided nor tainted by the photographic identification but was based upon his recollection of defendant at the scene of the crime. (See *People* v. *Noisey,* 265 Cal.App.2d 543, 549 [71 Cal.Rptr. 339].)

Hence, the testimony of Officer Wiggs alone, who was not discredited and whose testimony is not inherently improbable, was sufficient to support the trial court's finding of guilt and his denial of a new trial. ▮ A reviewing court will reverse the trial court's determination on a motion for a new trial for insufficiency of the evidence only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment. (*People* v. *Sheran,* 49 Cal.2d 101, 109 [315 P.2d 5].)

The judgment is affirmed.

McCabe, P. J., and Tamura, J., concurred.