[Crim. No. 13348. Fourth Dist., Div. One. June 24, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES EDWARD GREGORI, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Certified for publication with the exception of section III.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Jeffrey J. Stuetz, Deputy State Public Defender, and Marilee Marshall, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington and Keith I. Motley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, J.**—A fundamental moral and legal precept of our society is that a father should be responsible for the support of his minor child.[2] (See Civ. Code, §§ 196a, 4700, subd. (a), 7006, subd. (a).) Recognizing that social pressures and civil sanctions may not always assure performance of this responsibility, the Legislature has made the unexcused wilful failure "to furnish necessary clothing, food, shelter or medical attendance, or other remedial care" for a minor child a criminal offense. (Pen. Code, § 270.)[3] Absent an earlier adjudication and notice of paternity, an offender may be found guilty of a misdemeanor. With an earlier adjudication and notice of paternity, the offender may be found guilty of either a felony or a misdemeanor. The primary issue in this case is whether the misdemeanor-felony distinction tied solely to an earlier civil or criminal adjudication of paternity is constitutional. We decide that increased punishment for a father violating section 270 for the first time, but who has previously been adjudged to be the father in either a civil or a criminal case, denies him equal protection of the laws under our federal and state Constitutions. We conclude the compelling state purpose which warrants the imposition of criminal sanctions for the failure of a father to perform his duties is not furthered by increasing the punishment where the father's sole culpability has been either his insistence on or the fortuitousness of an earlier paternity determination. To hold otherwise would unconstitutionally deter some men from using the courts to affirmatively establish their paternity and force others to forego a legal resolution of paternity and consent to provide child support in order to avoid the risk of escalating their later failure to provide support into a felony. We reject Gregori's alternative equal protection argument based upon his assumed, but unestablished, factual predicate that fathers of children whose mothers are on public assistance are unfairly discriminated against through felony rather than misdemeanor prosecutions. We also de-

---

[2]In the context of this case for stylistic reasons we refer to the noncustodial parent as the father and the custodial parent as the mother. We recognize parental responsibility applies with equal force to both parents regardless of the noncustodial parent's gender. (See *Cotton v. Municipal Court* (1976) 59 Cal.App.3d 601 [130 Cal.Rptr. 876].)

[3]All statutory references are to the Penal Code unless otherwise indicated.

Section 270, in pertinent part, provides: "If a parent of a minor child willfully omits, without lawful excuse, to furnish necessary clothing, food, shelter or medical attendance, or other remedial care for his or her child, he or she is guilty of a misdemeanor punishable by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment. If a court of competent jurisdiction has made a final adjudication in either a civil or a criminal action that a person is the parent of a minor child and the person has notice of such adjudication and he or she then willfully omits, without lawful excuse, to furnish necessary clothing, food, shelter, medical attendance or other remedial care for his or her child, this conduct is punishable by imprisonment in the county jail not exceeding one year or in a state prison not exceeding one year and one day, or by a fine not exceeding one thousand dollars ($1,000), or by both such fine and imprisonment."

cide a continuing violation of section 270 over a period of time may not be arbitrarily divided into discrete units resulting in separate felony counts. In light of our conclusions, we modify the judgment in this case to reduce Gregori's first section 270 offense to a single misdemeanor conviction (see *People* v. *Temple* (1971) 20 Cal.App.3d 540 [97 Cal.Rptr. 794]) and, as modified, affirm the judgment.

I

An amended information filed December 31, 1980, charged Gregori with four felony violations of section 270. One count was alleged for each two-month period between January 1, 1980, and August 31, 1980. The information also alleged that both the superior and municipal courts had made earlier adjudications of paternity and Gregori had notice of those adjudications.

As the information suggests, Gregori is no stranger to the judicial process. Efforts to establish his paternity of Matthew S. first began in a 1974 civil action when Superior Court Judge Noon found him to be the father. Gregori was ordered to pay $50 monthly into a revenue and recovery account for Matthew's support. A written order to this effect signed by then Presiding Judge Yale was not received by Gregori until the latter part of August 1979.[4] On July 25, 1977, a municipal court complaint charged Gregori with two misdemeanor violations of section 270 for the periods between June 1, 1976, and November 30, 1976 (count one) and between December 1, 1976, through May 31, 1977 (count two). After a mistrial, the complaint was amended in 1979 to allege two additional misdemeanor violations to cover the periods between September 1, 1977, and February 28, 1978 (count three) and March 1, 1978, through August 31, 1978 (count four). The jury found Gregori to be the father of Matthew S. but returned a verdict of not guilty on each of the counts. Gregori's appeal from the judgment appears to have been dismissed because he was acquitted. (See § 1237.)[5] Another misdemeanor complaint filed in August 1980 charging Gregori with an additional five counts of section 270 violations for the period January 1, 1980, through July 31, 1980, was dismissed in September 1980 for lack of prosecution. A month later, the present information was filed. In his jury trial, the earlier municipal and superior court findings of paternity were admitted into evidence. The jury convicted him on all counts. The court suspended sentence and placed Gregori on probation for five years upon the conditions he serve one year in the county jail and that 30 days after his release from

---

[4]In December 1980 another superior court judge found Gregori in contempt for violating the 1974 oral order and sentenced him to serve 60 days.

[5]Section 1237 provides in pertinent part: "An appeal may be taken by the defendant: [¶] 1. From a final judgment of conviction . . . ."

custody he pay $50 per month child support plus $50 monthly towards an arrearage of $4250.[6] This appeal followed.

## II

■ Guarantees of equal protection embodied in the Fourteenth Amendment of the United States Constitution and article I, section 7 of the California Constitution prohibit the state from arbitrarily discriminating among persons subject to its jurisdiction. This principle, however, does not prevent the state from drawing distinctions between different groups of individuals but requires the classifications created bear a rational relationship to a legitimate public purpose. (*In re King* (1970) 3 Cal.3d 226, 231 [90 Cal.Rptr. 15, 474 P.2d 983], cert. den., 403 U.S. 931 [29 L.Ed.2d 709, 91 S.Ct. 2249].) Although we normally presume a law is constitutional, where the law affects a fundamental interest or creates suspect classifications the state must demonstrate a compelling interest which justifies the law and that the distinctions drawn by the law are necessary to further that purpose. (See *People* v. *Olivas* (1976) 17 Cal.3d 236, 243-244, 251 [131 Cal.Rptr. 55, 551 P.2d 375].)

■ Gregori's first equal protection argument is that section 270 punishes nonsupporting fathers who insist upon an initial judicial resolution of their paternity more severely than nonsupporting fathers who concede paternity. As noted above, section 270 is a misdemeanor where the father wilfully omits without lawful excuse to furnish necessary clothing, food, shelter or medical attendance for his child, but the identical conduct becomes a "wobbler," either a felony or a misdemeanor, where ". . . a court of competent jurisdiction has made a final adjudication in either a civil or a criminal action that a person is the parent of a minor child and the person has notice of such adjudication . . . ."

At first blush Gregori's argument appears to be meritless since it is well established the Legislature may require increased punishment for second offenders. (See § 666; *People* v. *Valenzuela* (1981) 116 Cal.App.3d 798, 809 [172 Cal.Rptr. 284].) Heavier punishment is proper for those persons who have been found guilty of and punished for specified prior crimes. (See § 667; *People* v. *Tijerina* (1969) 1 Cal.3d 41, 47 [81 Cal.Rptr. 264, 459 P.2d 680].) Had Gregori been previously convicted of violating section 270 his present felony conviction would withstand constitutional attack. But Gregori explains the breadth of the challenged part of the statute includes not only second offenders but all persons who may have been involved in any legal proceeding, civil or criminal, which resulted in an adjudication of

---

[6]At oral argument we were told that Gregori served the one year and has also served the 60 days for contempt.

paternity. Gregori claims the event of an adjudication of paternity in a previous legal proceeding is unrelated to the culpability of a man who later violates section 270.

An earlier proceeding may have been self-initiated by a man to declare himself the father of his minor child (see Civ. Code, § 7006, subd. (a)) or as part of an earlier divorce action (see Civ. Code, § 4700, subd. (a)). A man might hesitate before initiating or participating in one of these proceedings if he realized he was subjecting himself to a potential future felony prosecution under section 270. Since access to the courts is a fundamental interest (see *City of Long Beach* v. *Bozek* (1982) 31 Cal.3d 527, 530 [183 Cal.Rptr. 86, 645 P.2d 137], vacated 459 U.S. 1095 [74 L.Ed.2d 943, 103 S.Ct. 712], reiterated 33 Cal.3d 727 [190 Cal.Rptr. 918, 661 P.2d 1072]), section 270 must satisfy the strict scrutiny standard discussed above.

Every legal resource should be used to guarantee that fathers perform their statutory obligation to pay for the support of their children. In those cases where a father has once been convicted of violating section 270 his continuing efforts to evade his lawful responsibility should result in increased penal sanctions. Where there has not been an earlier conviction, however, but only a determination of paternity, why should this first offending father be deemed to have greater culpability than the first offending father whose paternity has never been established? A different moral status does not attach to a judicially declared father compared to one who admits to paternity but who has not been so adjudicated. In the context of the statute, a paternity adjudication is conceptually a neutral factor which should not bear on the degree of punishment to be imposed on the first offender. Although there is a clear and compelling state interest to be served by the penal statute, the distinction in punishment grounded solely on an earlier legal determination of paternity does not further the purpose of the statute. Accordingly, even though Gregori was found to be the father in two separate proceedings, a felony sentence may not be imposed.

Gregori's second equal protection argument is directed to his assertion a judicial paternity determination will always occur when the child and his mother receive public assistance because the district attorney is required to take all steps necessary to obtain support for the child. (See Welf. & Inst. Code, § 11475.1.) Gregori's argument may be viewed in two distinct ways, and we treat each in turn.

Gregori claims the district attorney impermissibly selectively enforces the felony provision of section 270 because fathers whose children and their mothers receive public assistance are more likely to have suffered earlier paternity adjudications. ■ "[I]n order to establish a claim of discrimi-

natory enforcement a defendant must demonstrate that he has been deliberately singled out for prosecution on the basis of some invidious criterion." (*Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286, 298 [124 Cal.Rptr. 204, 540 P.2d 44].) A defendant's mere claim of discriminatory enforcement is insufficient; he must produce evidence to support his contention. (*Lyons* v. *Municipal Court* (1977) 75 Cal.App.3d 829, 844 [142 Cal.Rptr. 449].) Gregori produced no evidence the district attorney is more likely to prosecute the fathers of children whose mothers receive public assistance than other fathers. Moreover, even if we assume the district attorney prosecutes more fathers in this class, Gregori would have to show the district attorney was deliberately singling out those fathers on an invidiously discriminatory basis. (See *Murgia* v. *Municipal Court, supra,* 15 Cal.3d at pp. 297-298.) On this record we cannot say the district attorney is enforcing section 270 in a discriminatory manner.

Gregori's argument may also be construed as a contention the felony provision of section 270 creates classifications based on wealth where the impoverished are more likely subjects of felony prosecutions. (See *Serrano* v. *Priest* (1976) 18 Cal.3d 728, 764-768 [135 Cal.Rptr. 345, 557 P.2d 929], cert. den., 432 U.S. 907 [53 L.Ed.2d 1079, 97 S.Ct. 2951].) Even if we assume a felony prosecution is more likely when the mother receives public assistance, we know nothing about the father's economic status. Because we will not presume those fathering children receiving public assistance are poorer than those fathering children who do not receive public assistance, Gregori has not demonstrated he is a member of a suspect class.

■ Gregori also challenges the four convictions contending either section 270 is unconstitutionally vague because defendants do not know when they have completed the crime, or, failure to provide is a continuing offense and he can be convicted of only a single crime. The Attorney General concedes Gregori's conduct cannot be viewed as representing multiple offenses.[7] We must interpret the statute in a manner consistent with its language and purpose and to eliminate doubts as to its constitutionality (*People* v. *Davis* (1981) 29 Cal.3d 814, 829 [176 Cal.Rptr. 521, 633 P.2d 186]) and conclude under these facts Gregori may be convicted only of a single crime.

A violation of section 270 requires continuous conduct which may range over a substantial length of time. (*People* v. *Nelson* (1940) 42 Cal.App.2d

---

[7]The deputy attorney general has acted in an exemplary professional manner. As a public attorney he must be forthright in admitting a defendant's argument has merit. (Cf. Cal. Rules of Professional Conduct, rule 7-102.) Because of the possible impact on offices of the district attorney throughout the state, we also appreciate the deputy attorney general's willingness as he explained at oral argument to alert certain of those offices before making the concession here.

83, 86 [108 P.2d 51]; *People* v. *Wallach* (1923) 62 Cal.App. 385, 390 [217 P. 81].) Violations of certain other offenses frequently involve repetitive or continuous conduct. (See *People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 [140 Cal.Rptr. 299] and cases cited representing continuous conduct involving child abuse; see also *People* v. *Packard* (1982) 131 Cal.App.3d 622, 626-627 [182 Cal.Rptr. 576] for continuing conduct representing a single theft.) Here, where Gregori acted in a constant fashion with but a single intent and objective in mind, the judgment must be modified to treat the four separate counts as a single offense.

### III*

. . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment of conviction of four felony convictions is modified to reflect a single misdemeanor conviction. As modified, the judgment is affirmed.

Brown (Gerald), P. J., and Work, J., concurred.

A petition for a rehearing was denied July 11, 1983, and appellant's petition for a hearing by the Supreme Court was denied September 8, 1983.

---

*See footnote 1, *ante*.