[No. F033011. Fifth Dist. Feb. 29, 2000.]

In re LUISA Z., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
LUISA Z., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Statement of the Case and Facts and part I.

**COUNSEL**

Francine R. Adkins Tone, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Venturi and Charles Fennessey, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HARRIS, J.—**

### INTRODUCTION

Appellant Luisa Z. was arrested for possession of marijuana for sale. The juvenile court initially placed her on informal probation, but appellant violated probation, and the juvenile court committed her to the California

Youth Authority (CYA). The court also ordered her to register as a narcotics offender, pursuant to Health and Safety Code section 11590, subdivision (a), upon her "release" from CYA.

In the nonpublished portion of this opinion, we will conclude the juvenile court did not abuse its discretion in committing appellant to CYA. In the published portion we will find the juvenile court lacked statutory authority to order a juvenile to register as a narcotics offender.

STATEMENT OF THE CASE AND FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I.*

*The Trial Court Did Not Abuse Its Discretion in
Committing Appellant to CYA*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.

*Registration as a Drug Offender*

The trial court committed appellant to CYA for a period not to exceed three years based on her admission that she possessed marijuana for sale in violation of Health and Safety Code[1] section 11359, and her violation of probation. The court also ordered appellant to register as a narcotics offender pursuant to Health and Safety Code section 11590, subdivision (a) upon her "release" from CYA. Appellant did not object to the imposition of the registration order.

Appellant asserts such a registration requirement can only be based on a criminal conviction rather than a juvenile adjudication, and the court lacked statutory authority to impose the registration requirement.

Respondent asserts appellant has waived any challenge to the court's failure to advise her of the registration order because she did not object at the disposition hearing. In the alternative, respondent asserts that even if

---

*See footnote, *ante*, page 978.

[1] All subsequent statutory references are to the Health and Safety Code.

appellant did not waive this objection, she cannot show prejudice because the trial court had the authority to require a juvenile to register as a narcotics offender.

In order to resolve these issues, we must first determine whether appellant's failure to object to the registration order waived review of this issue. Appellant asserts the court lacked the authority to impose such an order, and thus imposed an unauthorized sentence which may be challenged despite her failure to raise the issue below. Second, we must determine whether appellant, as an adjudicated juvenile committed to CYA, is a person within the narcotics registration statutes. Third, we must determine whether the court exceeded its authority in imposing such an order at the disposition hearing.

## A. *The registration requirement*

■ Respondent is correct that any objection to the court's failure to advise the party of a registration requirement is waived if not raised when the registration order is formally imposed, absent a showing of prejudice. (*People v. McClellan* (1993) 6 Cal.4th 367, 378 [24 Cal.Rptr.2d 739, 862 P.2d 739].) However, appellant asserts the registration order exceeded the court's statutory authority, and thus constituted an unauthorized sentence, which may be challenged despite failing to raise the issue at the disposition hearing. If the court lacked statutory authority to order a person to register as a narcotics offender, then that aspect of the disposition order was unauthorized and appellant's failure to object does not constitute waiver of the contention on appeal. (See *People v. Brun* (1989) 212 Cal.App.3d 951, 954 [260 Cal.Rptr. 850]; *People v. Scott* (1994) 9 Cal.4th 331, 354 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) Thus, we must review the narcotics offender registration requirements to determine whether the court's order may be reviewed as exceeding its jurisdiction.

■ "Registration requirements generally are based on the assumption that persons convicted of certain offenses are more likely to repeat the crimes and that law enforcement's ability to prevent certain crimes and its ability to apprehend certain types of criminals will be improved if these repeat offenders' whereabouts are known. (3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) § 1416, p. 1678.) Accordingly, the Legislature has determined that sex offenders (Pen. Code, § 290), narcotics offenders (Health & Saf. Code, § 11590) and arsonists (Pen. Code, § 457.1) are likely to repeat their offenses and therefore are subject to registration requirements." (*People v. Adams* (1990) 224 Cal.App.3d 705, 710 [274 Cal.Rptr. 94].)

■ The trial court herein relied on section 11590, subdivision (a) which requires the registration as a narcotics offender by "any person who is

convicted" of one of the enumerated narcotics offenses; "any person who is discharged or paroled from a penal institution where he or she was confined because of the commission of any such offense"; or any person who arrives in the state having an out-of-state conviction which would qualify as one of the enumerated narcotics offenses in California. While section 11590 creates a duty on any person within its terms to comply with the registration provisions, it does not give rise to a concomitant duty on the part of the trial court to order a convicted person to comply with such registration provisions. (*People v. Terrell* (1999) 69 Cal.App.4th 1246, 1258 [82 Cal.Rptr.2d 231].) In addition, registration does not constitute "punishment" for purposes of ex post facto analysis. (*People v. Castellanos* (1999) 21 Cal.4th 785, 799 [88 Cal.Rptr.2d 346, 982 P.2d 211].)

The section 11590, subdivision (a) registration requirement triggers associated statutory obligations, such as maintaining current registration and furnishing fingerprints and photographs to the Department of Justice. The registrant is subject to police inquiry in the event crimes similar to those for which he or she has registered have occurred. Anyone who fails to comply with the registration requirement is guilty of a misdemeanor. (§ 11594; *People v. Villela* (1994) 25 Cal.App.4th 54, 60 [30 Cal.Rptr.2d 253]; *People v. Brun, supra*, 212 Cal.App.3d at p. 958.)

The purpose of section 11590's registration requirement is to deter recidivism by facilitating the apprehension of past offenders. (*People v. Villela, supra*, 25 Cal.App.4th at p. 60; *People v. Brun, supra*, 212 Cal.App.3d at p. 958.) It has survived constitutional scrutiny based on the rational legislative basis for collecting and maintaining information concerning the whereabouts of drug offenders convicted of certain more serious drug offenses, such as possessing marijuana for sale. Retaining such information is properly within the exercise of the state's right to enact laws promoting public health, welfare and safety, by permitting local police to keep track of the identities and locations of drug offenders in the community. (*People v. Hove* (1992) 7 Cal.App.4th 1003, 1006 [9 Cal.Rptr.2d 295].) Moreover, the registration requirement is designed to minimize the intrusion into individual privacy. The information contained in the section 11590 registration shall not be open to inspection by the public or by any person other than a regularly employed peace officer or other law enforcement officer, and the registration requirement terminates in five years. (*People v. Hove, supra*, 7 Cal.App.4th at p. 1007, fn. 7; *People v. Terrell, supra*, 69 Cal.App.4th at p. 1258.) Finally, the registration requirement has been found reasonable in light of the offense and the danger to society. "Possessing marijuana for sale is analogous to cultivating marijuana in that it is the beginning of a process which ultimately places an illegal substance in the hands of a great number of consumers.

[Citation.]" (*People v. Hove, supra*, 7 Cal.App.4th at p. 1007.) For example, *Hove* dealt with a defendant ordered to register based on his conviction for possessing six and one-half pounds of marijuana for sale. "Given the quantity of marijuana found, the offense and the offender present a significant danger to society." (*Ibid.*)

In section 11590, the Legislature has expressed an intent to differentiate between various drug-related offenses and to require registration only for designated narcotics violations. "Had the Legislature intended to require all drug offenders to register, it could have drafted the statute to accomplish that purpose. The sentencing court is therefore not free to impose registration under section 11590 for convictions of crimes not listed in the statute. If it were otherwise, every sentencing court could nullify the Legislature's decision to treat convictions for different crimes in a different manner." (*People v. Brun, supra*, 212 Cal.App.3d at p. 954.) The court cannot subject a party to these specific statutory obligations and disabilities where the Legislature, by its omission of defendant's crime from section 11590, has manifested an intent that registration is not required. (*People v. Brun, supra*, 212 Cal.App.3d at p. 958.)

Thus, the juvenile court may have exceeded its authority and imposed an unauthorized order if section 11590, subdivision (a) does not permit the imposition of a registration requirement on a juvenile adjudicated a ward of the court and committed to CYA. (See *People v. Villela, supra*, 25 Cal.App.4th at p. 58; *People v. Saunders* (1991) 232 Cal.App.3d 1592, 1598 [284 Cal.Rptr. 212].) Appellant's failure to challenge the registration order does not waive the instant contention that the court's order exceeded its statutory authority.

B. *Section 11590, subdivision (a)*

We must next determine whether appellant is within the registration requirements of section 11590, subdivision (a), which provides in pertinent part:

"Except as provided in subdivisions (c) and (d), any person who is *convicted* in the State of California of any offense defined in Section . . . 11359, . . . or any person who is *discharged or paroled from a penal institution where he or she was confined* because of the commission of any such offense, or any person who is *convicted in any other state* of any offense which, if committed or attempted in this state, would have been punishable as one or more of the above-mentioned offenses, shall within 30 days of his or her coming into any county or city, or city and county in which he or she

resides or is temporarily domiciled for that length of time, register with the chief of police of the city in which he or she resides or the sheriff of the county if he or she resides in an unincorporated area." (Italics added.)

In the instant case, appellant admitted the allegations of the juvenile petition in that she possessed marijuana for the purpose of sale in violation of section 11359, which is a qualifying offense in the registration statute. However, her status presents a more difficult question as to whether the registration statute is triggered. Appellant's situation clearly does not involve an out-of-state offense. ▮ In addition, she is not within the mandates of section 11590 as a person "convicted" of a qualifying offense because "[u]nder the juvenile court law, a person adjudged a ward of the court has not been 'convicted' of anything." (*In re Bernardino S.* (1992) 4 Cal.App.4th 613, 618 [5 Cal.Rptr.2d 746].) Thus, appellant's juvenile adjudication is not a conviction within the meaning of section 11590, subdivision (a).

▮ Therefore, the court only had the authority to require appellant to register as a narcotics offender upon her "release" from CYA if she could be classified as "any person who is discharged or paroled from a penal institution where he or she was confined because of the commission" of the qualifying offense. (§ 11590, subd. (a).) Appellant was certainly "confined" in CYA because of her "commission" of the qualifying offense. In addition, an adjudicated juvenile committed to CYA may be released either through discharge or parole. (See, e.g., *In re Michael I.* (1998) 63 Cal.App.4th 462, 466 [73 Cal.Rptr.2d 650].)

We must examine the entire statutory scheme to determine whether a minor released from CYA following a juvenile adjudication and commitment is within the meaning of section 11590.

C. *Appellant's juvenile commitment to CYA*

We begin with the question of whether a juvenile commitment to CYA for violating the qualifying narcotics offense qualifies as confinement in a "penal institution" to trigger the registration requirement. Respondent asserts such language includes a juvenile who is committed to CYA.

There are several statutes that use the phrase "penal institution" in the course of describing prisons under the direction and control of the Department of Corrections. For example, Code of Civil Procedure section 1446 provides for the distribution of unclaimed money or property belonging to any person who dies while confined in a state penal institution "subject to

the jurisdiction of the Director of Corrections." Penal Code section 11150 addresses the registration requirements for persons convicted of arson, and provides that prior to the release of a person convicted of arson from an institution "under the jurisdiction of the Department of Corrections," the Director of Corrections shall notify the appropriate parties about the individual's release.

Penal Code section 667.5, subdivision (b) provides for a sentencing enhancement "for each prior separate prison term served for any felony." A previous version of Penal Code section 667.5 was interpreted as excluding a prior CYA commitment as a prior prison term to support the enhancement. (See *People v. Redman* (1981) 125 Cal.App.3d 317, 323 [178 Cal.Rptr. 49].) Thereafter, Penal Code section 667.5 was amended to include subdivision (j), which states that when a person subject to the custody, control and discipline of the Director of Corrections is incarcerated at a facility operated by the Department of Youth Authority, "that incarceration shall be deemed to be a term served in state prison." The amended language has been interpreted such that a youthful offender sentenced to state prison but transferred to CYA pursuant to Welfare and Institutions Code section 1731.5, subdivision (c) has served a prior prison term because the juvenile is deemed to be committed to the Department of Corrections and remains subject to the jurisdiction of the Department of Corrections and the Board of Prison Terms. However, a youthful offender who is directly committed to CYA pursuant to Welfare and Institutions Code section 1731.5, subdivision (a) is not deemed to have served a prior prison term because the juvenile is not subject to the custody, control, or discipline of the Department of Corrections. (*People v. Seals* (1993) 14 Cal.App.4th 1379, 1384-1385 [18 Cal.Rptr.2d 676].)

The phrase "penal institution" is used only once in statutes relating to juvenile adjudications and CYA. Welfare and Institutions Code section 1123 mandates the Director of the CYA to provide education about AIDS and HIV to "all wards at each *penal institution* within the jurisdiction of the department, including camps, . . ." (Italics added.) This statute has not been interpreted, and there are no further references to a "penal institution" within the CYA provisions.

There is no existing precedent as to whether a juvenile adjudication and CYA commitment constitutes a confinement in a "penal institution" within

the meaning of section 11590, subdivision (a).[2] There are some examples as to other institutions and facilities. For example, a county jail is a "penal institution." (*People v. Valenzuela* (1981) 116 Cal.App.3d 798, 807 [172 Cal.Rptr. 284].) In addition, the California Rehabilitation Center (CRC) is considered a "penal institution," based upon the statutory classification of such a facility as a prison under the jurisdiction of the Department of Corrections, the physical characteristics of such a center, and the dual purpose of narcotics commitments as not only treatment and rehabilitation but also the control and confinement of persons committed thereto. (*People v. Valenzuela, supra*, 116 Cal.App.3d at pp. 807-808.)

In contrast, a juvenile hall is not a penal institution: "[T]he juvenile hall shall not be in, or connected with, any jail or prison, and shall not be deemed to be, nor be treated as, a penal institution. It shall be a safe and supportive homelike environment." (Welf. & Inst. Code, § 851; *People ex rel. Deputy Sheriffs' Assn. v. County of Santa Clara* (1996) 49 Cal.App.4th 1471, 1488 [57 Cal.Rptr.2d 322]; *In re Rochelle B.* (1996) 49 Cal.App.4th 1212, 1219 [57 Cal.Rptr.2d 851]; *People v. Rackley* (1995) 33 Cal.App.4th 1659, 1668 [40 Cal.Rptr.2d 49].)

Respondent argues that CYA should be considered a "penal institution" because the nature and purpose of the juvenile court law has changed since *In re Aline D.* (1975) 14 Cal.3d 557 [121 Cal.Rptr. 816, 536 P.2d 65]. "At the time the Supreme Court published *In re Aline D.*, the general purposes of the juvenile justice system, as contained in former section 502 of the Welfare and Institutions Code, were to ' "secure for each minor . . . such care and guidance, preferably in his own home, as will serve the . . . welfare of the minor and the best interests of the State; . . . and when the minor is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents." ' [Citation.] Juvenile commitment proceedings were designed for the purposes of rehabilitation and treatment, not punishment. [Citation.]" (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 53 [260 Cal.Rptr. 258].)

However, *Aline D.* predated the amendment of former Welfare and Institutions Code section 502 (now § 202) regarding the purposes of the juvenile court law. Section 202 now recognizes punishment as a rehabilitative tool and emphasizes the protection and safety of the public. (*In re Lorenza M., supra*, 212 Cal.App.3d at p. 57.) In evaluating the court's exercise of

---

[2]*In re Anthony R.* (1984) 154 Cal.App.3d 772 [201 Cal.Rptr. 299] expressly declined to address the issue of whether CYA was a "penal institution" within the meaning of the offense of petty theft with a prior conviction served in a penal institution. (*Id.* at p. 778, fn. 4.)

discretion in committing a minor to CYA, we now do so with punishment, public safety, and protection in mind. (*Id.* at p. 58.) A juvenile commitment to CYA could be characterized as confinement in a "penal institution" based on the state's recognition of punishment and public safety as the purpose of the juvenile court law.

The amendments to the juvenile court law reflected an increased emphasis on punishment as a tool of rehabilitation. (*In re Asean D.* (1993) 14 Cal.App.4th 467, 473 [17 Cal.Rptr.2d 572]; *In re Michael D.* (1987) 188 Cal.App.3d 1392, 1396 [234 Cal.Rptr. 103].) But there is still a significant difference between incarceration in prison and incarceration at a Youth Authority facility, "both in terms of conditions of restraint and in length of confinement." (*People v. Rocha* (1982) 135 Cal.App.3d 590, 596 [186 Cal.Rptr. 132].) Incarceration in prison satisfies the primary purpose of punishing criminal behavior. (*Ibid.*) ▮ "The mission of the Authority, on the other hand, is not retribution but to protect society by rehabilitation." (*Ibid.*; see also *In re Myresheia W.* (1998) 61 Cal.App.4th 734, 740-741 [72 Cal.Rptr.2d 65]; *Mardesich v. California Youthful Offender Parole Bd.* (1999) 69 Cal.App.4th 1361, 1367 [82 Cal.Rptr.2d 294].)

▮ A determination as to whether CYA is a penal institution, however, does not resolve the question as to whether a juvenile may be required to register as a narcotics offender. Instead, a review of the statutory scheme behind the registration requirement reveals that it completely excludes juveniles from its provisions.

## D. *The statutory scheme*

The entirety of the statutory registration provisions reflects the exclusion of juveniles from the narcotics registration requirement. The narcotics registration statutes are contained in division 10 of the Health and Safety Code which constitutes the Uniform Controlled Substances Act. Within that division, chapter 10 addresses the control of users of controlled substances. Article 4, entitled Registration of Controlled Substance Offenders, consists of sections 11590 through 11594 as to the registration of narcotics offenders. As discussed above, section 11590, subdivision (a) provides the statutory authority for the court to order a narcotics offender to register with the statute.

A review of the remaining statutes in article 4's registration scheme is instructive. Section 11592 provides that any person who is "discharged or paroled from a jail, prison, *school, road camp, or other institution where he [or she] was confined*" because of the commission of one of the enumerated

narcotics offenses, "shall, prior to such discharge, parole, or release," be informed of his or her duty to register pursuant to section 11590 "by the official in charge of the place of confinement," who shall require the person to complete the forms mandated by the Department of Justice. (Italics added.) This section does not refer to a conviction, but only to the person's "commission or attempt to commit" one of the enumerated narcotics offenses. In addition, the reference to a school or "other institution where he [or she] was confined" could be interpreted as including CYA, in which appellant was "confined" after admitting her commission of the narcotics offense.

Section 11593 provides that any person who "is convicted" of one of the enumerated offenses "and who is released on probation or discharged upon payment of a fine," shall be informed of the registration requirement "by the court in which he has been convicted." This section is obviously inapplicable to an adjudicated juvenile who has not been "convicted" of anything.

Finally, section 11594 sets forth the requirements for the "registration required by Section 11590 . . . ." The person must register with the Department of Justice, provide fingerprints and a photograph, and keep the department advised of his or her residence. In addition, section 11594 sets forth the five-year limitation of the registration period, as follows: "All registration requirements set forth in this article shall terminate five years after the discharge *from prison*, release *from jail* or termination of probation or parole *of the person convicted*." (Italics added.) This section sets forth the five-year limitation for all narcotics registrations ordered pursuant to article 4, including the provisions of section 11590, subdivision (a). By its own terms, the limitations period cannot be applicable to a minor discharged or paroled from CYA following a juvenile adjudication and commitment. As discussed above, an adjudicated minor has not been "convicted" of anything—he or she cannot be considered as a convicted person whose probation or parole has been terminated. In addition, a minor discharged or paroled from CYA has not been "discharge[d] from prison" or "release[d] from jail."

A review of the statutory scheme of the registration requirement strongly suggests it does not apply to an individual such as appellant, who was adjudicated a ward of the court as a juvenile and committed to CYA. Even if CYA were to be considered a "penal institution" within the meaning of section 11590, any inclusion of an adjudicated juvenile within the registration requirement would leave the juvenile forever in limbo, given the absence of any benchmark by which to calculate the running of the five-year registration period as defined in section 11594. Such an interpretation would permit the court to order the adjudicated juvenile to register as a narcotics

offender upon discharge or parole from CYA but leave the juvenile forever registered, in direct contradiction of the statutory mandate, given the impossibility of applying any benchmark period to the juvenile's legal status.

We are thus left with some confusion as to the meaning of section 11590's delineation of the persons within the registration requirement. The inclusion of any person "convicted" of the enumerated narcotics offenses obviously includes all adult offenders, regardless of where such an individual is confined, in the absence of any contrary statutory provisions.[3] Why, then, does section 11590, subdivision (a) provide an alternative classification based not on the person's "conviction" but on a person's discharge or parole from "a penal institution," and why does section 11592 include a person who has been confined in a "school" or "other institution"?

The answer may be suggested by a review of the former version of Penal Code section 290, an analogous registration statute which deals with sexual offenders. (See *People v. Hove, supra,* 7 Cal.App.4th at p. 1006.) Prior to 1986, Penal Code section 290, subdivision (a) required registration only by persons who had been "convicted" of specified sex offenses, which clearly did not apply to juveniles adjudged wards of the court. (*In re Bernardino S., supra,* 4 Cal.App.4th at p. 618.) However, language in former subdivision (b) suggested such wards might be within the registration provisions: " '(b) Any person who . . . is discharged or paroled from a jail, prison, school, road camp, *or other institution* where he or she was confined because of the commission or attempt to commit one of the above-mentioned offenses . . . shall, prior to discharge, parole, or release, be informed of his duty to register under this section. . . .' " (4 Cal.App.4th at p. 618, fn. 2, italics added.) *Bernardino S.* found it conceivable that former subdivision (b) of Penal Code section 290 "might have been construed to require registration by a juvenile offender who had been 'confined' in an 'institution' as a result of having committed one of the enumerated offenses. It is more likely, however, that subdivision (b) was intended not to expand the class of persons subject to the registration requirement, but merely to prescribe a procedure for giving notice of that requirement to persons described in subdivision (a). It might also be supposed that applicability to juvenile wards is suggested by the reference to the Youth Authority in subdivision (g)," which provided that whenever any person was released " 'on parole or probation and is required to register under this section but fails to do so within the time prescribed, the Board of Prison Terms, the Youth Authority,

---

[3]We note that Welfare and Institutions Code section 3054 expressly exempts a person *committed to CRC* from article 4's registration requirement, even though such a person may have been convicted of a qualifying narcotics offense and CRC is considered to be a "penal institution." (*People v. Valenzuela, supra,* 116 Cal.App.3d at pp. 807-808.)

or the court, as the case may be, shall order the parole or probation of the person revoked.'" (*In re Bernardino S., supra,* 4 Cal.App.4th at p. 618, fn. 2.) *Bernardino S.* concluded the reference in former subdivision (g) was "best explained as anticipating situations where a juvenile might be committed to the Youth Authority after trial and conviction in a criminal court." (4 Cal.App.4th at p. 618.) *Bernardino S.* further noted its conclusion was supported by the Legislature's amendment of Penal Code section 290 to expressly include wards of the juvenile court committed to the Youth Authority within the sexual offender registration statute, thus inferring the former version of the statute did not extend to juvenile offenders. (4 Cal.App.4th at pp. 618-619.) *Bernardino S.* suggests an alternative interpretation of the language in the narcotics offenders statutes of article 4 which still excludes juveniles adjudicated wards of the court who are then committed to CYA.

We therefore conclude that appellant was not within the class of offenders which may be ordered to register as a narcotics offender pursuant to sections 11590 and 11594 of article 4. The trial court's order exceeded the scope of its authority, appellant's failure to object has not waived the error, and the registration order must be stricken.

## DISPOSITION

The order requiring registration as a narcotics offender, pursuant to Health and Safety Code section 11590, subdivision (a), is stricken, and the juvenile court is directed to amend its records accordingly. In all other respects the judgment is affirmed.

Thaxter, Acting P. J., and Levy, J., concurred.