Filed 9/10/13

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

In re DAVID R., a Person Coming Under
the Juvenile Court Law.

| | |
|---|---|
| THE PEOPLE, | A136798 |
| Plaintiff and Respondent, | (Del Norte County Super. Ct. No. JDSQ126118) |
| v. | |
| DAVID R., | |
| Defendant and Appellant. | |

The juvenile court adjudicated David R. (the minor) a ward of the court after it determined he committed arson (Pen. Code, § 451, subd. (c))[1] and resisted a police officer (§ 148). The court placed the minor on probation and ordered him to register pursuant to section 457.1.

On appeal, the minor contends there is insufficient evidence of malice to support an arson finding. He also argues the arson registration requirement does not apply to him because he was not committed to the Department of Juvenile Facilities (DJF).

In the unpublished portion of the opinion, we conclude sufficient supports a finding of arson in violation of section 451, subdivision (c). In the published portion of the opinion, we conclude the court erred by requiring the minor to register as an arson

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, part I of this opinion is not certified for publication.

[1] Unless otherwise noted, all further statutory references are to the Penal Code.

1

offender pursuant to section 457.1 because he was not committed to, or paroled from, what was formerly known as the Department of Youth Authority or California Youth Authority (now the DJF). We therefore strike the section 457.1 registration requirement.

## FACTUAL AND PROCEDURAL BACKGROUND

Crescent City Police Sergeant Erik Apperson went to the Masonic Lodge (lodge or building) and saw it was on fire. The damage to the building was extensive: the roof collapsed and the building's contents were "completely destroyed." The lodge was declared "a total loss."

After learning the 13-year-old minor and his friend, Michael H. (Michael), were "people of interest," Sergeant Apperson and another law enforcement officer went to the minor's house and interviewed him. Initially, the minor told law enforcement officers he, his sister, and Michael were in the building before the fire and that he saw an African American man "exiting the building that he believed may be suspect." Later, however, the minor said Michael was upstairs alone; the minor also said that later, Michael said he, Michael, "lit a carpet on fire." Finally — and after being *Mirandized* — the minor "accept[ed] responsibility for finding [a cigarette] lighter upstairs, lighting a box and leaving the building while the box was burning." The minor said he found the lighter in a desk drawer and lit a candle and then a box. "And then he also said he lit a box" on fire. According to Sergeant Apperson, the minor claimed to be "playing around. He was horseplaying."[2]

The minor said he blew on the fire to put it out and was unsuccessful.[3] In response, Sergeant Apperson told the minor he thought the minor blew on the fire to "cause the fire to burn more." Sergeant Apperson explained that the minor may have denied he left the fire burning "at some point in the interview," but by the end of the interview, "the idea was that he — he left it burning. He was aware that the fire had

---

[2] A fire captain specialist with the California Department of Forestry and Fire examined the building and determined there were "two possible causes" of the fire: "arson . . . and playing with fire[.]"

[3] Michael disagreed with the minor's claim that the minor blew on the fire to put it out.

2

started and he fled the building." The minor said he fled the building because he was "scared."

The minor's 10-year-old sister, Jenny H. (Jenny), testified that she, the minor, and Michael went into the lodge and "messed up everything and threw soda on the ground[.]"[4] They went upstairs, where they found "a whole bunch of boxes" and "lighters and stuff." According to Jenny, the minor set fire to a cardboard box he found in a storage room. Right afterward, he left the room: "he just lit [the box] and took off[.]" Jenny initially testified that after the minor lit the fire, "[i]t went out and then he blowed [*sic*] it and then it tried to go back again" but the fire did not reignite. She also said, however, that the flame ignited again and the box was still burning when the minor left. Then Jenny said she "tried to blow it out when they went down there and then I couldn't, so I went down there with them." She explained, "I was trying to blow it out and then he went out, and I said, wait, try and blow it out, and then he — he tried to blow it out. It blew out and then it — and then I tried to blow it out, and then it came right back up."

When the prosecutor tried to clarify the sequence of events, Jenny said the minor found a box and lit it on fire. About "five seconds" after he set the box on fire, the group left the room and quickly walked downstairs. Before they went downstairs, she and the minor blew on the box and the fire "just blew out, and then — and then it didn't light again." According to Jenny, the box was not burning when the minor went downstairs. She testified she blew on the box after the minor left and the fire reignited. Then she stepped on the box and the fire "went out" and she ran downstairs. On redirect examination, Jenny said she knew the box "would light on fire" when she blew on it but she did it anyway. Jenny estimated she saw flames for five minutes before running away. On recross-examination, Jenny testified the fire was not out when the minor left the room. The fire "went out" and then "came back[.]"

In a Welfare and Institutions Code section 602 petition, the People alleged the minor committed arson (§ 451, subd. (c)) and resisted a police officer (§ 148). At the

---

[4]    After Jenny testified, the court concluded her "ability to relate what she saw definitely has some limitations."

3

jurisdictional hearing, counsel for the minor argued there was insufficient evidence of "willful intent to burn the building or any malice. This was some kids horsing around, engaged in playing with fire, one of the most fascinating substances humans have ever discovered." When the court asked about evidence of maliciousness, the prosecutor responded, "The simple act of lighting a box . . . that does not belong to the defendant and on a property on which he is not authorized to be in for the purposes of igniting a box for the purposes of setting a fire."

The court determined the minor committed arson in violation of section 451, subdivision (c), explaining "malicious is defined in the applicable jury instruction as when a person intentionally does a wrongful act. [¶] It appears to me that [the minor] knew that burning the box inside the Masonic Lodge was wrong. While he is only 13 years of age, he left. He didn't tell anybody. He left hurriedly, may have even tried to blow out the fire. I'm not sure about that. But it's clear to me that he knew what he did was wrong. And so that would give the maliciousness that's required." The court found the minor "did intend to burn the box." The court noted that Jenny's testimony was not critical because the minor admitted he started the fire and admitted to Sergeant Apperson "that it was burning when he left." The court also determined the minor violated section 148.

At the dispositional hearing, the court declared the minor a ward of the court, ordered him to serve 6 to 12 months in juvenile hall, and placed him on probation after his release from custody. The court also ordered the minor to "register as an arsonist" pursuant to section 457.1.

DISCUSSION

I.

*Substantial Evidence Supports the Juvenile*
*Court's Finding of Malice*

The minor argues there was insufficient evidence of malice to support a finding of arson because "the direct, natural and highly probable consequences of [his] actions were not reasonably foreseeable" to him.

4

We apply the standard used in criminal cases to determine whether the evidence was sufficient to sustain a Welfare and Institutions Code section 602 petition. (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.) We review the entire record in the light most favorable to the judgment to determine "whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Snow* (2003) 30 Cal.4th 43, 66; *In re V.V., supra,* at p. 1026.) We presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*In re V.V., supra,* at p. 1026.) Reversal is not warranted unless it appears "'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) ""'"[W]hen two or more inferences can reasonably be deduced from the facts,' either deduction will be supported by substantial evidence, and 'a reviewing court is without power to substitute its deductions for those of the trial court.' [Citations.]"'" (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.)

Under section 451, "[a] person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property." "'Maliciously'" means "a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." (§ 450, subd. (e.).) There are two types of malice: malice in fact, "defined as 'a wish to vex, annoy, or injure[,]'" and malice in law, "defined . . . as 'an intent to do a wrongful act, established either by proof or presumption of law.'" (*In re V.V., supra,* 51 Cal.4th at p. 1028.) "Malice in law may be 'presumed' or 'implied' from the intentional doing of the act without justification or excuse or mitigating circumstances." (*Ibid.*)

To determine whether malice in law — the "'intent to do a wrongful act'" — is "established for arson, malice will be presumed or implied from the deliberate and intentional ignition or act of setting a fire without a legal justification, excuse, or claim of right." (*In re V.V., supra,* 51 Cal.4th at p. 1028; see also CALCRIM No. 1501 [defining

5

malice as "intentionally [doing] a wrongful act"]; 1 Witkin, Cal. Crim Law (4th ed. 2012) Elements, § 11, pp. 277-278 ["the element of malice in most criminal statutes is satisfied by the intentional doing of the act without justification or excuse or mitigating circumstances"].)  Our high court has explained that to satisfy the malice requirement for arson, "there must be a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property." (*In re V.V., supra,* at p. 1029.)

In re V.V. is instructive.  There, two 17 year olds lit a "cherry bomb" firecracker and threw it down a "brush-covered hillside . . . causing a fire that burned five acres[.]" (*In re V.V., supra*, 51 Cal.4th at pp. 1023, 1030.)  The California Supreme Court held the minors' "acts of intentionally igniting and throwing a firecracker amid dry brush on a hillside, although done without intent to cause a fire or other harm, were sufficient to establish the requisite malice for arson." (*Ibid.*)  In reaching this conclusion, our high court explained the malice element of arson is satisfied when "the willful and intentional act is committed under circumstances that create an obvious fire hazard.  Thus, a willful act that causes a fire without further evidence of the underlying circumstances would be insufficient to establish malice." (*Id.* at p. 1031, fn. 6.)

In re V.V. held substantial evidence supported the juvenile court's finding of malice because the minors "knew that their intentional acts created a fire hazard." (*In re V.V., supra,* 51 Cal.4th at p. 1030.)  The court noted the minors tried to avoid the dry brush when they threw the firecracker, creating an inference "they knew a fire could result from setting" off the firecracker "on the brush-covered hillside." (*Ibid.*)  Additionally, our high court pointed to evidence the minors knew of the "dangers of playing with firecrackers" before they threw the cherry bomb and that they "ran away and did not notify the authorities about the brush fire." (*Ibid.*, fn. omitted, & p. 1031.)  Finally, the court determined "[a] reasonable person would not have objectively believed that a firecracker thrown from [the minors'] position would reach" an area of safety over 150 yards away and concluded the minors "were aware of facts that would lead a reasonable person to realize that the direct, natural, and highly probable consequence of

6

throwing a lit 'cherry bomb' from their location would be its landing in the dry brush short of the concrete area and causing a fire." (*Id.* at pp. 1030, 1031.)

Under *In re V.V.,* the minor "may be guilty of arson if he . . . act[ed] with" malice, defined as an "awareness of facts that would lead a reasonable person to realize that the direct, natural, and highly probable consequence" of lighting a cardboard box on fire would be the "burning of the relevant structure or property." (*In re V.V., supra,* 51 Cal.4th at p. 1030, 1029). Here, the record supports an inference the minor acted with malice. Although he may not have intended to set the lodge on fire, there is sufficient evidence he committed a "willful and intentional act . . . under circumstances that create[d] an obvious fire hazard." (*Id.* at p. 1031, fn. 6.) The minor set fire to a cardboard box sitting atop other cardboard boxes on the carpet. The minor was cavalier and dismissive; he was "playing around." He then ran from the building while the box was still burning. As Sergeant Apperson testified, the minor "was aware that the fire had started and he fled the building" while it was still burning because he was "scared." And as in *V.V.,* the minor "ran away and did not notify the authorities about the . . . fire[,]" which further supports an inference he understood the natural and probable consequences of his act, and therefore acted with malice. (*Ibid.*)

That the minor claimed he blew on the fire to extinguish it does not alter our conclusion. He started the fire and left the lodge while the fire was still burning. Sergeant Apperson testified the minor apparently blew on the fire to, "cause the fire to burn more." This inference is supported by Jenny's testimony that she knew blowing on the fire would stoke the flames and by the testimony that the other minor involved, Michael, disagreed with the minor's claim that he blew on the fire to put it out. We conclude there was sufficient evidence the minor set the fire under circumstances that the "direct, natural, and highly probable consequences would be the burning of" the lodge. (*In re V.V., supra,* 51 Cal.4th at p. 1029.)

According to the minor, the court erred by failing to consider his age "when determining whether the malice element of arson has been established." He also contends the arson finding must be reversed because there was no substantial evidence "a

7

reasonable 13-year-old would realize that the direct, natural and highly probable consequence of setting fire to a corner of a box would be the burning of the Lodge."[5] We are not persuaded. First — and assuming without deciding the court was required to consider the minor's age when determining whether the evidence was sufficient to support a finding of malice — it appears the court *did* consider the minor's age. Second, in the absence of evidence the court did *not* consider the minor's age, we must assume the court did. (*In re Julian R.* (2009) 47 Cal.4th 487, 498-499.) Third, and as discussed above, there was sufficient evidence the minor could have foreseen that a burning cardboard box could spread fire to the rest of an unoccupied building.

## II.

### *The Court Erred by Ordering the Minor to Register Pursuant to Section 457.1*

As stated above, the court ordered the minor to register pursuant to section 457.1, which provides in relevant part: "Any person who, having committed the offense of arson or attempted arson, and after having been adjudicated a ward of the juvenile court on or after January 1, 1993, is discharged or paroled from the Department of the Youth Authority shall be required to register, in accordance with the provisions of this section, until that person attains the age of 25 years, or until the person has his or her records sealed pursuant to Section 781 of the Welfare and Institutions Code, whichever comes first." (§ 457.1, subd. (b)(3).)

The minor contends section 457.1's registration requirement does not apply to him because he was not committed to, or paroled from, what is now known as the DJF.[6] He

---

[5]    At oral argument, counsel developed this argument and asserted, for the first time, that: (1) the juvenile court must make a capacity finding as to the minor's ability to appreciate the direct, natural, and highly probable consequence of lighting the cardboard box on fire; and (2) expert testimony is required to make this assessment. Counsel, however, acknowledged the absence of cases supporting this argument.

[6]    We reject the People's contention, raised in a footnote, that the minor forfeited his right to challenge the registration requirement by failing to object in the juvenile court. "A sentence is said to be unauthorized if it cannot 'lawfully be imposed under any

relies on *In re Bernardino S.* (1992) 4 Cal.App.4th 613 (*Bernardino S.*), where the minor admitted performing a lewd and lascivious act upon a child under 14 in violation of section 288, subdivision (b). (*Id.* at pp. 616-617.) The juvenile court adjudged the minor a ward of the court and ordered him to register as a sex offender pursuant to section 290, subdivision (d)(1), which at that time provided ""(d)(1) Any person who, on or after January 1, 1986, is discharged or paroled from the Youth Authority to the custody of which he or she was committed after having been adjudicated a ward of the court pursuant to Section 602 of the Welfare and Institutions Code because of the commission or attempted commission of the following offenses shall be subject to registration under the procedures of this section: . . . any offense defined in Section 288 . . . ." (*Id.* at p. 619, fn. 3.)

On appeal, the minor argued he was not required to register as a sex offender under section 290 because he was never committed to the Youth Authority. (*Bernardino S., supra,* 4 Cal.App.4th at p. 619.) Our colleagues in Division Two agreed and held "By its plain words, . . . section 290 requires registration of juvenile wards only when they are discharged or paroled from the Youth Authority after having been committed for one of the enumerated offenses. When the language of a statute is clear there is no occasion for construction and courts should not indulge in it. [Citation.] The plain language of section 290 says that it applies to a class of juveniles which does not include appellant. From this it follows that the statute does not require appellant's registration as a sex offender." (*Id.* at pp. 619-620.) The *Bernardino S.* court explained, "the legislative determination of who should register and who should not is exclusive, and . . . the trial court cannot expand the legislative classification through its power to impose conditions of probation. Here the Legislature adopted a classification which exempted applicant

circumstance in the particular case' [citation], and therefore is reviewable 'regardless of whether an objection or argument was raised in the trial and/or reviewing court.' [Citations.] An obvious legal error at sentencing that is 'correctable without referring to factual findings in the record or remanding for further findings' is not subject to forfeiture. [Citation.]" (See *In re Sheena K.* (2007) 40 Cal.4th 875, 887 [forfeiture rule does not extend to challenges to probation conditions presenting pure questions of law].)

from the registration requirement.  We conclude that the trial court lacked the power to impose such a requirement." (*Id.* at pp. 623-624.)

As in *Bernardino S.,* we conclude the registration requirement may not be imposed upon persons, including the minor, not specifically described in section 457.1.  Like section 290, the legislative determination of who should register pursuant to section 457.1 is "exclusive" and "the trial court cannot expand the legislative classification through its power to impose conditions of probation." (*Bernardino S., supra,* 4 Cal.App.4th at pp. 623-624.)  Had the Legislature intended for all persons adjudicated as wards of the court for committing arson or attempted arson to register, "'it could have drafted the statute to accomplish that purpose.'" (*In re Luisa Z.* (2000) 78 Cal.App.4th 978, 984.)[7]

We conclude the plain language of section 457.1 requires registration of juvenile wards only when they are discharged or paroled from the DJF after having been committed for arson or attempted arson.  Because the minor was not "discharged or paroled" from the DJF, he was not required to register pursuant to section 457.1.

DISPOSITION

The juvenile court's dispositional order is modified by striking the condition requiring the minor to register pursuant to section 457.1.  The jurisdictional and dispositional orders are otherwise affirmed.

---

[7]    Analysis of the legislative history of section 457.1 supports our conclusion that the Legislature intended the registration requirement to apply to juveniles *confined* in — and then discharged or parole from — the DJF because of the commission of arson or attempted arson.  In 1992, the Legislature amended section 457.1 to "extend [the] registration requirement to apply to a person discharged or paroled from the Department of the Youth Authority where he or she was confined because of a commission of the offense of arson or attempted arson. . . ." (Legis. Counsel's Dig., Sen. Bill No. 2008 (1991-1992 Reg. Sess.) ch. 691; see also Sen. Com. on Judiciary, com. on Sen. Bill No. 2008 (1991-1992 Reg. Sess.) Mar. 31, 1992, p. 4 ["the bill would additionally extend this provision to apply to a person confined in CYA because of the commission or attempt to commit one of the specified offenses"].)  Here, the minor was not confined in, nor discharged or paroled from the DJF.

                                     _____

                                     Jones, P.J.

We concur:

_____

Simons, J.

_____

Bruiniers, J.

A136798

11

Superior Court of the County of Del Norte, No. JDSQ126118, William H. Follett, Judge

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, Ronald E. Niver and Huy T. Luong, Deputy Attorneys General, for Plaintiff and Respondent.

Jonathan Soglin and Stephanie Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

A136798