Filed 8/23/22 P. v. J.R. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>J.R.,<br><br>    Defendant and Appellant. | 2d Crim. Nos. B311542, B313672<br>(Super. Ct. No. YJ40620)<br>(Los Angeles County) |

      J.R. appeals a juvenile court order adjudicating him to be a ward pursuant to Welfare and Institutions Code section 602, and committing him to the California Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF). We strike the discretionary conditions of probation imposed by the court, but otherwise affirm.

### FACTUAL AND PROCEDURAL HISTORY

#### First Petition

      On August 7, 2020, the Los Angeles County District Attorney filed a petition alleging that J.R. carried an unregistered, loaded firearm on his person or in a vehicle in

violation of Penal Code section 25850, subdivision (a).[1]  On August 27, 2020, J.R. admitted the allegation.  The juvenile court declared the crime to be a felony, adjudicated J.R. to be a ward of the court, and placed him on probation with terms and conditions.  (Welf. & Inst. Code, § 602.)

*Second Petition*

Shortly after midnight on October 1, 2020, Long Beach Police Officer Jeffrey Vandemoortel received a dispatch call reporting gunshots fired near Locust Avenue and Pacific Coast Highway.  He arrived at the scene and rendered first aid to E.J., who had gunshot wounds to each leg as well as his left elbow.  Police Officer Daniel Gibson was nearby and observed four Hispanic males running away.

A female witness contacted police officers and stated that she saw several people running across a nearby driveway.  Police Officer Daniel Larrieu then saw a Hispanic man wearing a red hat and a white shirt peer over a fence.  Larrieu drew his firearm and ordered the man to surrender.  Instead, the man dropped behind the fence and a chase ensued.  Larrieu began pursuing a second person as well.

Police Officer Shmuel Rouzaud also received the dispatch call regarding gunshots fired.  The call described a suspect wearing a long-sleeved white shirt and a red hat.  Rouzaud subsequently observed a person wearing that clothing who was walking and then running.  Rouzaud pursued but could not catch the person.

Rouzaud then walked the route of the chase and, at approximately 3:00 a.m., encountered J.R. and another person

---

[1] All statutory references are to the Penal Code unless otherwise stated.

inside an open garage.  J.R. wore a hoodie without a shirt underneath, jeans, and tan-colored shoes.  J.R. gave a false name and false birthdate to Rouzaud.  Rouzaud searched the garage but did not discover evidence of any crime.  After six to 10 minutes, he released J.R.

Within a short time, Police Officer Bradley Muhlenkamp stopped J.R. and another minor, A.A., on Pacific Coast Highway. When detained, J.R. wore a red sweater, black sneakers, and had a single black glove.  "Little Mobsters 13," a local street gang, associated with the color red.

Investigating officers then went to an apartment building near where Larrieu first saw J.R. peer over the fence.  In a shopping cart outside an apartment, officers discovered a long-sleeved white shirt, tan shoes, and a .40 caliber semi-automatic firearm.  A red hat lay behind the cart.  Larrieu testified that the items were similar to those worn by the person he had chased. The owner of the cart disclaimed ownership or knowledge of the items.

Investigating officers also found four .40 caliber and four nine-millimeter bullet casings in the area of the shooting.  A criminalist testified that the firearm found in the shopping cart had fired the casings located at the crime scene.

Police officers placed J.R. and A.A. in a police car and surreptitiously recorded their conversation with a body camera. J.R. asked A.A. if he knew where "the burner and everything" were located.  A.A. responded that the items were in the shopping cart.  J.R. also stated that he was wearing A.A.'s red sweater and that his "homie . . . Thumper" would be proud of him.  The prosecutor played the video/audio recording at the adjudication hearing.

Investigating officers located videotape of the incident. Officer Muhlenkamp viewed the videotape and identified a person with a firearm as consistent with A.A. and a person wearing a long-sleeved white shirt as consistent with J.R. The identifications rested upon body build and specific items of clothing; faces were not identifiable from the videotape.

On October 2, 2020, the district attorney filed a petition alleging that J.R. committed attempted murder in violation of sections 664 and 187, subdivision (a), along with special allegations and enhancements. The juvenile court later granted the prosecutor's motion to dismiss the special allegations and enhancements. On March 12, 2021, the court found the petition to be true and continued J.R. as a ward of the court.

At a later disposition hearing, the juvenile court committed J.R. to DJF. The court calculated J.R.'s maximum time to be seven years eight months for the two petitions, less credits.

J.R. appeals and contends that the juvenile court erred by: 1) denying his motion to dismiss based upon the alleged failure of law enforcement to preserve evidence; 2) denying his motion based upon *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*); 3) committing him to the DJF; and 4) imposing probation conditions with his DJF commitment.

## DISCUSSION

### I.

J.R. argues that the juvenile court erred by denying his motion to dismiss pursuant to *Arizona v. Youngblood* (1988) 488 U.S. 51, and *California v. Trombetta* (1984) 467 U.S. 479 (*Trombetta/Youngblood*). He asserts the error denied him due process of law pursuant to the federal and California Constitutions.

4

J.R.'s motion concerned a homeowner's videotape that was recorded over before preservation by law enforcement. A police officer viewed the video recording and took partial videos and two still photographs. The officer believed that a technician would download the video recording and preserve it, but that did not occur. The video recording did not capture the shooting and, as the homeowner who provided the video recording testified, identification of persons depicted was "nil to none." The homeowner also testified that, although his surveillance camera could capture images in color, at night the images were in black and white and sometimes ghostly. Thus, the video recording was in black and white and had no audio.

The juvenile court denied J.R.'s *Trombetta/Youngblood* motion because the officers involved did not demonstrate bad faith, the video recording was not in their possession, and J.R. did not establish that the video recording was exculpatory.

The United States Supreme Court has held that law enforcement agencies have a duty, under the due process clause of the Fourteenth Amendment, to preserve evidence "that might be expected to play a significant role in the suspect's defense." (*California v. Trombetta, supra*, 467 U.S. at p. 488.) To fall within the scope of this duty, the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*Id.* at p. 489.) It is the defendant's burden to establish that the evidence had exculpatory value. (*People v. Alexander* (2010) 49 Cal.4th 846, 879.)

The state's responsibility is further limited when the defendant's challenge is to "the failure of the State to preserve

5

evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." (*Arizona v. Youngblood*, *supra*, 488 U.S. at p. 57.)  In such cases, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." (*Id.* at p. 58.)  We review a trial court's ruling on a *Trombetta/Youngblood* motion for substantial evidence. (*People v. Montes* (2014) 58 Cal.4th 809, 837.)

J.R. did not establish that the video recording was materially exculpatory rather than " 'potentially useful.' " (*Illinois v. Fisher* (2004) 540 U.S. 544, 549.)  Even if *Trombetta* and its progeny applied to a claim of a failure to collect evidence, *Trombetta* speaks of evidence whose exculpatory value is apparent. (*Arizona v. Youngblood*, *supra*, 488 U.S. at p. 56; *People v. Montes*, *supra*, 58 Cal.4th at p. 838.)  Thus, J.R. was required to establish that the police acted in bad faith in failing to preserve the recordings, i.e., that they were aware that the recordings had exculpatory value and allowed their destruction. This J.R. failed to do.  At best, the officers' actions were negligent, but negligence does not amount to bad faith. Substantial evidence supports the trial court's implied finding that the officers did not act in bad faith.

## II.

J.R. asserts that the juvenile court erred by denying his *Pitchess* motion to discover evidence of police misconduct.

Prior to adjudication, J.R. filed a discovery motion alleging on information and belief that one or more of the police officers involved in his arrest and the investigation refused to collect or destroyed exculpatory evidence, i.e., a color videotape of the

crime. The juvenile court denied the motion because the declaration in support of the motion did not set forth a plausible factual scenario for the discovery. The court limited J.R.'s motion to "the four corners of the declaration on information and belief."

A defendant must establish good cause for discovery of a police officer's confidential personnel records that contain information relevant to the defense. (*Pitchess v. Superior Court*, *supra*, 11 Cal.3d at pp. 537-538.) Good cause is a " 'relatively low threshold' " and requires a showing that 1) the personnel records are material to the defense, and 2) a stated reasonable belief that the records contain the type of information sought. (*People v. Thompson* (2006) 141 Cal.App.4th 1312, 1316.) Good cause contemplates "a logical link between the defense proposed and the pending charge." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1021.)

Defendant must also establish a plausible factual foundation for his defense. (*Warrick v. Superior Court*, *supra*, 35 Cal.4th at p. 1025.) To do so, the defendant "must present . . . a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents." (*Ibid.*) A scenario sufficient to establish a plausible factual foundation "is one that might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Id.* at p. 1026.) The factual scenario need not be reasonably likely, persuasive, or even credible. (*Id.* at pp. 1025-1026.) We review the denial of a *Pitchess* motion for an abuse of discretion. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 992.)

The juvenile court properly denied J.R.'s *Pitchess* motion because he did not establish that efforts to conceal or destroy any exonerating videotape might have occurred. J.R. also did not establish that an exonerating videotape may exist. He did not offer a nonculpable explanation for his presence at the scene of the attempted murder, as reflected in videotapes that were presented to the court. The court did not abuse its discretion by denying J.R.'s motion because he did not meet the standards for discovery of the police personnel records.

*III.*

J.R. argues that the juvenile court abused its discretion by committing him to DJF because it is not the least restrictive placement for his rehabilitation. He adds that he suffers from depression, suicidal ideation, and a chaotic home environment.

At the disposition hearing, the juvenile court provided a lengthy statement of its reasoning. The court acknowledged that it must balance the safety of the community with the welfare of J.R., including necessary tools for his rehabilitation. The court also noted that J.R.'s prior petition resulted from his apprehension with a loaded firearm in a vehicle with a parolee, and the present petition involved an escalating level of criminality. The court then discussed its options – camp, a long-term commitment, and DJF. It then concluded that the safety of the community and J.R. compelled the selection of DJF as the least restrictive placement.

"No ward of the juvenile court shall be committed to the [DJF] unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by

8

the [DJF].” (Welf. & Inst. Code, § 734.)  To order a DJF commitment, there must be evidence demonstrating both a probable benefit to the minor by the commitment and the inappropriateness or ineffectiveness of less restrictive alternatives.  (*In re A.R.* (2018) 24 Cal.App.5th 1076, 1080-1081; *In re Jonathan T.* (2008) 166 Cal.App.4th 474, 485.)  We evaluate the court’s exercise of discretion in committing a minor to the DJF by focusing on punishment, public safety, and protection of the minor.  (*In re J.C.* (2017) 13 Cal.App.5th 1201, 1217; *In re Luisa Z.* (2000) 78 Cal.App.4th 978, 987-988.)  We review the court’s DJF commitment for an abuse of discretion.  (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329-1330 [we do not substitute our judgment for that of the juvenile court].)

The juvenile court did not abuse its discretion by the DJF commitment.  J.R. committed an extremely serious offense, i.e., attempted murder with a firearm.  His victim suffered three gunshot wounds.  An earlier less restrictive placement for personal possession of a loaded firearm was not successful.  J.R.’s detention report indicated that he admitted to drug use, removed his ankle bracelet, and a bench warrant had been issued for his violation of Community Detention Program terms.  The court also considered him a flight risk.  J.R. engaged in fighting during custody and a sharpened metal weapon was discovered in his room.  J.R. was an active member of Little Mobsters 13, and the attempted murder was committed against a rival gang member. In selecting a DJF commitment, the court relied upon the DJF structured educational program, including job and occupational training, and its integrated behavioral treatment program.  The court’s reasoned justification for its decision is not arbitrary or

9

capricious. J.R.'s commitment to DJF is in his best interests and that of public safety.

*IV.*

J.R. asserts that the juvenile court erred by imposing discretionary probation conditions given his commitment to DJF. He does not contest, however, the conditions requiring mandatory victim restitution, DNA donation, and firearm restriction. The Attorney General concedes.

"[T]he juvenile court's imposition of discretionary conditions of probation constitutes an attempt to regulate or supervise the minor's rehabilitation, a function solely in the hands of [DJF] after the minor's commitment. . . . Simply put, the imposition of probationary conditions constitutes an impermissible attempt by the juvenile court to be a secondary body governing the minor's rehabilitation." (*In re Allen N.* (2000) 84 Cal.App.4th 513, 516.) It is of no import that similar conditions may be imposed by DJF. (*Ibid.*) Accordingly, imposition of the discretionary conditions was improper.

*DISPOSITION*

We strike the conditions of probation imposed by the juvenile court, except for conditions regarding mandatory victim restitution, DNA donation, and firearm restriction, but otherwise affirm. The court shall amend its records accordingly and forward certified copies of the relevant documents to DJF.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.*

---

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11

John C. Lawson II, Judge

Superior Court County of Los Angeles

_____

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.