Filed 4/27/26  P. v. Atkinson CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D087443 |
| Plaintiff and Respondent, | (Super. Ct. No. RIF1904874) |
| v. | |
| ALSON ATKINSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Johnnetta Anderson, Judge.  Judgment modified; remanded for resentencing.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Daniel Rogers and Amanda Lloyd, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Alson Atkinson guilty of one count of felony failure to provide necessities to a minor child (Pen. Code, § 270).[1]  The jury also found true allegations that Atkinson committed the crime against a particularly vulnerable victim and that he took advantage of a position of trust.  At sentencing, the trial court placed Atkinson on formal probation for two years and sentenced him to 120 days in jail, which the court stated Atkinson could serve in a work release program.

On appeal, Atkinson claims that there is insufficient evidence to support his conviction for failing to provide necessities to a minor child.  Atkinson also claims that the conviction must be reduced from a felony to a misdemeanor.  The People contend that there is sufficient evidence to support Atkinson's conviction for a violation of section 270 but concede in a supplemental brief that the conviction should be reduced to a misdemeanor.

We conclude that there is substantial evidence to support Atkinson's conviction for failing to provide necessities to a minor child.  We further accept the People's concession that the conviction must be reduced from a felony to a misdemeanor.  Accordingly, we modify the judgment to reflect that Atkinson stands convicted of a misdemeanor violation of section 270 and we remand for resentencing.

PROCEDURAL AND FACTUAL BACKGROUND

A. *Procedural background*

The People charged Atkinson with nine felony offenses: three counts of willful harm or injury to a child (§ 273a, subd. (a); counts 1, 2, 4); three counts of failure to provide for a minor child (§ 270; counts 3, 7, 9); two

---

[1]     Unless otherwise specified, all subsequent statutory references are to the Penal Code.

2

counts of cruel or inhumane corporal punishment or injury of child resulting in a traumatic condition (§ 273d; counts 5 and 8); and one count of false imprisonment (§ 236; count 6). The information named three children whom Atkinson had adopted as victims: D.A. (counts 1-3), L.A. (counts 4-7), and O.A. (counts 8 and 9). The information further alleged two aggravating facts — that each of the victims were particularly vulnerable (Cal. Rules of Court, rule 4.421(a)(3)) and that Atkinson took advantage of a position of trust and confidence to commit the crimes (Cal. Rules of Court, rule 4.421(a)(11)).

A jury found Atkinson guilty of count 7, failure to provide necessities to L.A., and found both aggravating circumstances to be true as to that count. The jury found Atkinson not guilty of counts 2, 4, 5, 8, and 9. The jury could not reach a verdict on the remaining counts, which the trial court subsequently dismissed in the interest of justice.

B. *Factual background*[2]

1. *The People's evidence*

At trial, as detailed in our sufficiency of evidence discussion below, the People presented evidence that Atkinson had failed to present food and clothing for L.A.

2. *Defense evidence*

Atkinson began working as a social worker in 2003. He testified he had "witnessed children who ha[d] been severely abused and neglected and that's what drove [him] to wanting to work with protecting children." Atkinson stated that he ensured that his children had balanced meals and that he did

---

[2] We refer here only to some of the evidence pertaining to the single count on which the jury found Atkinson guilty, count 7 for failing to provide necessities to victim L.A.

not believe it was ever appropriate to withhold food as a punishment. Atkinson also said that he provided L.A. with appropriately fitting clothes, but that L.A. would destroy his clothing and shoes.

Atkinson also testified that L.A. and D.A. had significant behavioral issues. According to Atkinson, L.A. would eat food off of the ground, hide food, defecate on himself, steal, and lie. Atkinson also said that D.A. had acted violently and been hospitalized for mental health reasons after acting violently toward Atkinson, and that D.A. had threatened to destroy Atkinson's life.

Atkinson also said that L.A. and D.A. had both admitted to him that they had made false accusations against him.

## DISCUSSION

A. *There is substantial evidence to support Atkinson's conviction for failing to provide necessities to a minor child*

Atkinson claims that there is insufficient evidence to support his conviction for failure to provide necessities to a minor child under section 270.

1. *Standard of review*

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] This determination 'presumes in support of the judgment the

4

existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Cardenas* (2025) 18 Cal.5th 797, 821.)

2. *Governing law*

Section 270 makes it unlawful for the parent of a minor child to "willfully omit[], without lawful excuse, to furnish necessary clothing, food, shelter or medical attendance, or other remedial care for his or her child."[3]

The parties do not dispute that CALCRIM No. 2981 properly outlines the elements of a violation of section 270 and specifies that the People are required to prove the following in order to establish a violation of the statute: (1) the defendant was the parent of a child; (2) the child was a minor; (3) the defendant failed to provide necessities for the child; and (4) the failure to provide necessities was willful and without lawful excuse. In addition, the parties agree that, as defined in CALCRIM No. 2981, "[n]ecessities are

---

[3]     Section 270 provides in relevant part, "If a parent of a minor child willfully omits, without lawful excuse, to furnish necessary clothing, food, shelter or medical attendance, or other remedial care for his or her child, he or she is guilty of a misdemeanor punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment. If a court of competent jurisdiction has made a final adjudication in either a civil or a criminal action that a person is the parent of a minor child and the person has notice of such adjudication and he or she then willfully omits, without lawful excuse, to furnish necessary clothing, food, shelter, medical attendance or other remedial care for his or her child, this conduct is punishable by imprisonment in the county jail not exceeding one year or in a state prison for a determinate term of one year and one day, or by a fine not exceeding two thousand dollars ($2,000), or by both such fine and imprisonment."

5

necessary clothing, food, shelter, [and] medical care[, or other remedial care] for a minor child."[4]

3. *Application*

Atkinson contends that there is insufficient evidence in the record to demonstrate that he willfully failed to provide clothing or food for L.A. While the evidence was disputed and far from overwhelming, we conclude the following evidence, viewed in light most favorable to the jury's verdict, constitutes substantial evidence to support that verdict.

With respect to clothing, a health technician, who served as an assistant to the nurse at L.A.'s school, testified. She stated that L.A.'s teacher would send him to the health office because "he would smell, or his shoes would be ripped or his clothing didn't fit, or he wasn't feeling well." The health technician estimated that she would see L.A. "maybe every other day."

The health technician testified, "He could come to the health office when his shoes were broken and he couldn't walk, or when it was raining, his shoes would be very wet, his clothes would be wet, the clothes wouldn't fit him. And it was more for like the shoes, it [*sic*] would be broken. He would be walking with broken shoes. We can't have that at school because of safety issues."

The health technician stated that L.A.'s shoes "looked horrible," and that "when he [would] walk, his shoes would make noise because they were broken from the front." L.A. wore these same shoes every time he came to the health office. The health technician called Atkinson "maybe five times at

---

4    The trial court instructed the jury under CALCRIM No. 2981.

the most," to tell him that L.A. had broken shoes. Atkinson would be "upset," would "raise his voice" at the health technician and would say that L.A. "would have to learn to deal with that." According to the heath technician, Atkinson "didn't want to come bring him shoes." L.A.'s shoes "got to a point where [the health technician] had to use tape to wrap his shoes so it didn't flop when he walked."

The health technician explained that eventually, after she had duct-taped L.A.'s shoes together, the shoes had so many holes that L.A. could no longer walk. The health technician called Atkinson and told him that L.A. needed to have shoes brought to him. Although Atkinson brought L.A. shoes to the school, the technician said that Atkinson was "very angry" and that he threw the shoes at L.A. This was the only time that Atkinson ever came to the school in response to the health technician's phone calls. On every other occasion, according to the health technician, Atkinson would refuse to come to the school.

The health technician also explained that "[a]lmost every day" she would see L.A. wearing clothes that did not fit him. For example, L.A. would wear jeans that either were too small and with holes or they "would be baggy and he didn't have a belt." L.A. appeared to be uncomfortable. On a couple of occasions, after the health technician told L.A. that she would call "home for a belt," L.A. responded, "No, my dad won't bring it, so I'll use a rope," and the health technician would use a rope to hold up his pants.

L.A.'s second-grade teacher also testified that there were at least three instances in which L.A. wore either dirty clothes or clothes that he had worn the previous day to school. In addition, the teacher "would see [L.A.] walking to school with no jacket early in the morning" when "it was cold outside or raining."

7

The teacher also explained that L.A. "had a pair of tennis shoes where his toes were poking out the front." She noted that it "was like the shoes had a mouth," and she observed that L.A.'s toes were exposed when he walked. The teacher added that the shoes did not appear new, but rather "worn" and "dirty." L.A. wore this same pair of shoes throughout second grade.

In addition, the teacher stated that "sometimes [L.A.] had a foul odor," which she believed stemmed from L.A.'s inability to "wipe correctly or use the facilities." The teacher added, "[a]nd because there was a smell, I would usually send him to the nurse."[5]

With respect to food, D.A. testified that when he was 17 years old, Atkinson started locking food in his bedroom, using a padlock.[6] The prosecutor also asked D.A., "How long did this go on for, [where] there wasn't really food in the fridge or the kitchen?" D.A. responded, "I don't remember. I know it was a good amount of time, though, because my friend's mom was buying me food."

In addition, an investigator stated that D.A. had described he and his brother's limited access to food in Atkinson's home as follows: "[D.A.] stated there were no nutritional foods for the children within their ability to get it, nothing in the kitchen that they could grab that had any nutritional value. And he also stated that other foods were being kept locked in the room

---

[5]     An investigator testified that D.A. had told him that there was no toilet paper in their house and that they had been told to use the restroom at school.

[6]     A sheriff's investigator searched Atkinson's home and found a padlock in Atkinson's bedroom and a latch on the door that appeared to be usable with the padlock.

belonging to Alson Atkinson." The investigator stated that D.A. told him that Atkinson had told the children that he had stopped buying food and toiletries for the house because "they didn't deserve it and that it wasn't his responsibility to do so."

The People also presented evidence of a forensic interview conducted with L.A. when he was nine years old. L.A. made several statements during the interview regarding the limitations that Atkinson placed on L.A.'s access to food. For example, the interviewer asked, "[I]f you're hungry at the house, are you able to get food?" L.A. responded, "No." After L.A. explained that he was required to ask Atkinson for food, the interviewer asked, "What happens if you don't ask for food?" L.A. responded, "[I]f I lie about it, um, he hits me with wood."

When the interviewer asked L.A., "Do you get like breakfast, lunch, and dinner?" L.A. responded, "Sometimes." L.A. elaborated that "there's been sometimes that only ate [*sic*] twice." And, when the interviewer asked whether there had "ever been a time when [L.A.] didn't eat," L.A. responded, "When I don't do the dishes."

Atkinson's arguments in support of his claim that such evidence is insufficient are unpersuasive and depend on an improper reweighing of the evidence and reassessment of the credibility of the witnesses. (See, e.g., *People v. Oyler* (2025) 17 Cal.5th 756, 820 [in considering a sufficiency challenge, "[w]e do not reweigh evidence or reevaluate a witness's credibility"].) For example, with respect to clothing and shoes, Atkinson argues that L.A. "elected to rip, cut, or tear it himself," and he notes that L.A. testified at trial that he wore his shoes in such a manner as to "mess them up." The jury was able to weigh L.A.'s trial testimony that he had lied previously about Atkinson's abuse and neglect in light of L.A.'s forensic

9

interview and his acknowledgment at trial that he loved his father and he did not want anything bad to happen to Atkinson. With respect to the failure to provide food, Atkinson points to L.A.'s trial testimony that there was always food available, medical evidence that L.A. was "overweight," and Atkinson's own testimony that his children would overeat. It was, however, up to the jury to consider how to weigh this evidence against the evidence discussed above upon which a reasonable jury could find that Atkinson had failed to provide L.A. with adequate food.

Accordingly, we conclude there is substantial evidence to support Atkinson's conviction for failing to provide necessities to a minor child.

B. *The felony conviction for violation for failing to provide necessities must be reduced to a misdemeanor*

In his opening brief on appeal, Atkinson argued that there was insufficient evidence to sustain a felony conviction for a violation of section 270 and he contended that the conviction should be reduced to a misdemeanor.

After the completion of briefing, we issued a supplemental briefing order directing the parties to brief the following question, "Is this court required to reduce the felony conviction on count 7 for a violation of Penal Code section 270 to a misdemeanor conviction under the equal protection clauses of the state and federal constitutions? (See *People v. Gregori* (1983) 144 Cal.App.3d 353, 356 [(*Gregori*)].)"

As noted in footnote 3 above, the violation of section 270 is a misdemeanor unless "a court of competent jurisdiction has made a final adjudication in either a civil or a criminal action that a person is the parent of a minor child and the person has notice of such adjudication." In *Gregori, supra*, 144 Cal.App.3d 353, this court concluded that, while felony

10

punishment can be imposed constitutionally on persons previously found guilty of a violation of section 270, the statute violates equal protection to the extent felony "punishment [is] grounded solely on an earlier legal determination of paternity." (*Gregori*, at p. 359.)

In their supplemental letter brief, the People concede that, in light of *Gregori*, "appellant's felony conviction should be reduced to a misdemeanor under the equal protection clause."

We accept the People's concession and reduce Atkinson's conviction for a violation of section 270 to a misdemeanor. In light of our reduction of Atkinson's felony conviction to a misdemeanor, the matter must be remanded for resentencing.

## DISPOSITION

The judgment is modified to reflect that Atkinson stands convicted on count 7 of a misdemeanor violation of section 270. The matter is remanded for resentencing.

BUCHANAN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DO, J.

11